*In re* SPECIAL EDUCATION PLACEMENT OF STEVEN WALKER (In the Matter of the Special Education Placement of Steven Walker, Plaintiff-Appellee, v. Joseph Cronin *et al.*, Defendants-Appellants).

First District (4th Division)   No. 85—2081

Opinion filed December 31, 1987.

JIGANTI, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Karin Kepler, Assistant Attorney General, of Chicago, of counsel), for appellants.

Matthew D. Cohen, of Skokie, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff, Steven Walker, instituted this action to obtain an award of post-judgment interest against Joseph Cronin, Director of the Illinois Board of Education, pursuant to section 2—1303 of the Code of Civil Procedure. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1303.) The circuit court awarded interest on the judgment entered in favor of plaintiff in the amount of $5,310.

Cronin appeals, contending that assessment of interest against the Illinois State Board of Education violates sovereign immunity and that the award of interest was improperly calculated in any event.

We affirm in part and modify in part.

BACKGROUND

Walker, by his mother, brought an action against Cronin and Glenbrook High School District 225, alleging that they wrongfully denied him placement in a residential special education program facility. After reviewing the Illinois Board of Education's decision to deny Walker the necessary funding to place him in such a facility, the circuit court reversed, finding that the public school could not adequately meet Walker's needs. This court affirmed the trial court, holding that since Walker was emotionally handicapped under the pertinent law, he was entitled to appropriate public education free of charge. (*In re Special Education Placement of Steven Walker* (1982), 107 Ill. App. 3d 1053, 438 N.E.2d 582.) Accordingly, Cronin and the local school district were ordered to reimburse Walker's mother for money that she spent enrolling her son in the residential education program at Lakeside Children's Center in Milwaukee, Wisconsin. .

This reimbursement, representing the expenses Mrs. Walker incurred for Lakeside's services for the period between November 9, 1978, and April 22, 1981, the date of the order, was not then reduced to a sum certain.

In November 1982 Walker furnished defendants with an itemization of the amounts spent on his education. On December 27, 1982, defendants offered Walker one-half of the amount requested, which he rejected.

The parties unsuccessfully attempted to resolve their differences. Finally, on February 24, 1983, the parties agreed that the principal sum owing was $39,334.49. In May 1983 Walker sent defendants verification of payments made.

On July 5, 1983, Walker filed a motion for a rule to show cause why defendants should not be held in contempt, or in the alternative, be compelled to pay the judgment by a date certain. Walker also requested payment of interest on the judgment from the date the court entered its April 22, 1981, judgment.

On June 19, 1985, the trial court held that Walker was entitled to 6% interest pursuant to section 2—1303 (Ill. Rev. Stat. 1983, ch. 110, par. 2—1303). Interest was calculated from April 22, 1981, to July 22, 1983, in the amount of $5,310.

OPINION

I

Defendants initially argue that the trial court lacked jurisdic-

tion[1] to award judgment interest against the State because of its sovereign immunity. Unless the State specifically waives immunity by statute, they argue, no claim against it can be maintained.

The trial court, on the other hand, relied on the terms of section 2—1303, the judgment interest statute, in ruling that the State was in fact liable for 6% interest *per annum* on the judgment. Ill. Rev. Stat. 1983, ch. 110, par. 2—1303.

Section 2—1303 provides, in pertinent part:

> "Judgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment until satisfied or 6% per annum when the judgment debtor is a unit of local government as defined in Section 1 of Article VII of the Constitution, a school district, a community college district, *or any other governmental entity.*" (Emphasis added.)

In and of itself, the phrase "or any other governmental entity" contains no restrictions as to type or level of governmental entity. While it does not expressly refer to the State, it can hardly be said that the State is not a governmental entity. The plain meaning of the term, therefore, should not be circumvented by a construction that renders it surplusage.[2] We accordingly must reject defendants' proposed construction of the statute, which would erase the term "other governmental entities." Since the interest statute is in derogation of the common law it must be strictly construed and nothing should be read into or out of it by implication. See *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 577, 413 N.E.2d 394, 397.

█ Defendants' argument is founded upon a reading of the statute that underplays the phrase "any other governmental entity" in favor of a strained interpretation of legislative history. According to defendants, this statute is the amended version of two former interest statutes, Public Act 80—722 and Public Act 80—914, both effective October 1, 1977, and codified at section 3 of the Interest Act (Ill. Rev. Stat. 1977, ch. 74, par. 3) (hereinafter Public Act 80—722 and Public Act 80—914).) Public Act 80—722 provides in part that "[j]udgments recovered before any court shall draw interest at the rate of 8% per

---

[1]By legislative enactment the State is generally insulated from suit under the sovereign immunity doctrine. (Ill. Rev. Stat. 1985, ch. 127, par. 801.) An award of interest is a claim against the State and is not proper unless authorized by specific legislative enactment. *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 394.

[2]Government is "the organization, machinery, or agency through which a political unit exercises authority and performs functions *** and the body of persons that constitutes the governing authority of a political unit or organization." Webster's Third New International Dictionary, p. 982, subsections 7a, 8 (1981).

annum from the date of the same until satisfied or 6% per annum when the judgment debtor is a unit of local government, as defined in Section 1 of Article VII of the Constitution, or a school district or community college district." Ill. Rev. Stat. 1977, ch. 74, par. 3.

The pertinent language of Public Act 80—914 reads, "Judgments recovered before any court shall draw interest at the rate of 8% per annum from the date of the judgment until satisfied, except that judgments recovered against governmental entities shall draw interest at the rate of 6% per annum." Ill. Rev. Stat. 1977, ch. 74, par. 3.

Defendants rely on published information of legislative debates over the above statutes, in which there were no specific references made to the State's liability. They assert that the intent, therefore, was to impose the interest liability against local governmental entities only. Defendants attempt to bolster this argument by contending that the existing interest statute is merely the literal combination of the previous two public acts that were on the books at the same time. Hence, they assert, the amendment was merely part of a revisory act that should be given no independent weight.

The excerpts of legislative debate that defendants cite, however, do not bear this out. It may be that the State was never expressly mentioned. However, the focus on local governmental entities in discussions of Public Act 80—722 is logical because that version of the statute was in fact limited to local entities. (See 80th Ill. Gen. Assem., House Proceedings, May 4, 1977 at 8-12 (comments on House Bill 507).) As to Public Act 80—914, Senator Netsch went on record as opposing the reduced rate of interest assessed against government entities (as opposed to private entities) by stating, "If it is fair for those who have a judgment against them to pay a certain rate of interest if they are private companies or private persons, [then] it is somewhat more than fair that *governmental units* do the same thing. And it is quite clear that among the greatest offenders for receiving judgments against them and then either prolonging the appellate process or simply prolonging the pay process are *governmental units*. *** [S]ome of *** the most serious offenders in that respect are *** *local governmental units*." (Emphasis added.) (77th Ill. Gen. Assem., Senate Proceedings, June 29, 1977, at 23-24 (statements of Senator Netsch regarding Senate Bill 594).) Senator Netsch's comments are not limited to local governments; on the contrary, they encompass all governmental entities, with the reference to local entities as being "some" of the worst offenders.

Section 2—1303's term "other governmental entity" is in no way qualified. Public Act 80—722, however, *is* limited by its terms to local

governmental entities. (See *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 394.) Public Act 80—914, on the other hand, applies by its terms to "governmental entities," without qualification. There is, accordingly, no reason to assume that the amended statute, even as a combination of the two previous acts, was intended to reach *only* local governmental entities.

In fact, the argument that the two prior acts were combined actually supports the plaintiff's construction. The enumeration of specific local government units in the amended statute can be seen as a simple transfer of the entire language of Public Act 80—722, and the unqualified phrase "other government entities" can be viewed as an attempt to insure that the meaning of Public Act 80—914 remains intact, so that there is no doubt that *all* governmental entities are brought within the scope of liability.

■■ ■ As an alternative argument, defendants urge us to apply the doctrine of *ejusdem generis*, the principle of construction that transforms the general term "other" into "other such like" when specific classes of persons or things are followed by general, broader statutory language referring to other persons or things. Since the itemized governmental entities in section 2—1303 are all local in nature, so defendants' argument goes, the "other" entities must be others of the same class, *i.e.*, local.

Such a construction, however, is contrary to the principle of giving meaning to each word of a statute so as not to render any portion superfluous. "[E]jusdem generis applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing [*sic*] the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires." (N. Singer, 2A A. Sutherland Statutory Construction §47.18, at 177 (4th ed. 1984).) When the specific words embrace all the members of the class, however, "the general words take a meaning beyond the class. To apply the rule in this instance would render the general words meaningless for the reason that there is nothing of the same kind (ejusdem generis) to fall within their purview. Its application, consequently, would contravene the more important rule of construction that all words are to be given effect. In order to prevent their rejection as surplusage, the general words take an unrestricted meaning on the ground that the legislature, by the addition of general words to an exhaustive enumeration, must have intended that they have meaning outside the class." N.

Singer, 2A A. Sutherland Statutory Construction §47.21, at 184 (4th ed. 1984).

Section 2—1303 appears to contain an exhaustive enumeration of local governmental entities, since section 1 of article VII of the Illinois Constitution defines units of local government as "counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental power or powers in respect to limited governmental subjects, but does not include school districts." The interest statute thus incorporates all units of local government as defined, plus school districts and college districts.[3] That being the case, the phrase "other governmental entities" takes on a broader meaning outside the class of local governmental entities. The broad meaning of governmental entity obviously includes State governments.

Surely, the legislature could have easily narrowed the scope of the statute by inserting the word "local" before the phrase "governmental entity." Or, the statute could have contained an express exclusion for State agencies. Absent such express limitation, we cannot infer one based on a former, significantly different version of the statute and the case that interpreted it. (Compare *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 394 (interest against the State not allowed under former general interest statute (Ill. Rev. Stat. 1977, ch. 74, par. 3)), with *Preston v. Thompson* (N.D. Ill. 1983), 565 F. Supp. 294 (interest against State is allowed under section 2—1303 because the legislative amendment added "other governmental entities" to former statute's listing of local governmental entities).) The court in *Preston v. Thompson* took note that the legislature amended the statute after the Illinois Supreme Court's decision in *City of Springfield v. Allphin*, concluding that the *Allphin* decision was inapplicable to the amended statute.

Finding the State liable for interest on a judgment properly entered against it is both fair and logical, since the interest component is merely part of the compensation for the loss incurred. In the pending case, other law created Walker's remedy against the State, since the State is obliged to furnish free educational services to

---

[3]Although defendants contend that such entities as county health departments are not included within this definition of local governmental entities, they cite no supporting authority. Indeed, to the extent that these health departments are considered governmental in nature, they would appear to be covered in the general phase "special districts, and units, designated as units of local government by law, which exercise limited governmental power or powers in respect to limited governmental subjects."

handicapped persons. We believe that the allowance of interest on the judgment for reimbursement in no way undermines the State's sovereign immunity, since we find that section 2—1303 contemplates interest awards at the lower rate against all governmental entities. Thus the State has waived its immunity in this instance by legislative act.

## II

■ Having determined that defendants are indeed liable to pay judgment interest under section 2—1303, we must determine as of what date interest began to accrue.

Walker urges us to affirm the trial court's finding that interest should be awarded as of the entry of the April 22, 1981, order in which liability was determined. Defendants, on the other hand, contend that interest could not be calculated "until a sum certain [was] agreed upon," which in this case did not occur until February 24, 1983, "after a series of discussions and meetings."

We find defendants' position on this issue to be persuasive. We are aware of no case in which a post-judgment interest award has been entered on a judgment of liability until the judgment amount has been determined.

In *Rosenbaum v. Rosenbaum* (1978), 65 Ill. App. 3d 228, 382 N.E.2d 270, the appellate court remanded for recalculation a judgment for reimbursement of attorney fees that the plaintiff had paid. On a subsequent appeal, the court held that interest on the judgment did not accrue until the date of the new, or recalculated, judgment, since the original judgment was inaccurate and therefore not subject to interest. (*Rosenbaum v. Rosenbaum* (1981), 94 Ill. App. 3d 352, 382 N.E.2d 270.) The court noted that the judgment debtor could not tender the amount of the judgment, thereby halting the accrual of interest, until the actual amount owed was determined on remand.

The instant case involves a final judgment for reimbursement without a contemporaneous assessment of the amount owed. The judgment order provided for the reimbursement of Walker in accordance with the applicable provisions of the Illinois School Code. As such, it was in the nature of an accounting, requiring the ascertainment of all sums Mrs. Walker had paid that were reimbursable.

It appears from the record that the parties initially disagreed as to the amounts owing under the April 1981 final judgment. For a period of time the parties were involved in negotiations for settlement. Accordingly, there was no liquidated sum upon which tender could be made as of April 21, 1981.

The record indicates and defendants admit that on February 24, 1983, the parties reached agreement that the principal amount owed was $39,334.49. By that date the parties had completed the "accounting" of sums due, agreeing upon a principal amount of the $39,334.49. There was no further dispute as to the *calculation* of the judgment amount, as was the case in *Rosenbaum*, and no need for the court to redetermine the amount.[4]

We hold that since the parties agreed on a sum certain on February 24, 1983, and this judgment amount of $39,334.49 was tendered on July 22, 1983, interest shall be awarded Walker for that period of time, 148 days. Six per cent per annum simple interest on $39,334.49 is $2,360.07, divided by 365 days is $6.47 per day. The total interest on 148 days, therefore, is $957.56.

Since the modification of the interest award is merely a matter of arithmetic, there is no need to remand this matter; pursuant to our authority under Supreme Court Rule 366(a)(5), we vacate the previous interest award and enter judgment in the amount of $957.56. 107 Ill. 2d R. 366(a)(5).

For the foregoing reasons, we affirm that portion of the trial court's order finding that defendants were liable under section 2—1303 for 6% interest, modify the amount of interest awarded, and enter judgment in favor of Walker in the amount of $957.56.

Affirmed in part and modified in part.

McMORROW, P.J., concurs.

JUSTICE JIGANTI, dissenting:

In *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 413 N.E.2d 394, the Illinois Supreme Court set forth the criteria necessary to impose liability upon the State for interest. The court said a statute must contain "affirmative statutory language" imposing liability. Further, statutes that in general terms impose interest "but do not specifically refer to the State are not sufficient authority to hold the State liable." *City of Springfield v. Allphin* (1980), 82 Ill. 2d 571, 578, 413 N.E.2d 394, 397.

The statute (proposed) to impose interest does not specifically re-

---

[4]Although there was a substantial passage of time after judgment was entered and before the amount was determined, Walker could have moved for a prove up at any time and thereby triggered the accrual of interest sooner.

fer to the State. The only arguable allusion to the State is the reference to "other governmental entity." That term follows a listing of a "school district" and "a community college district." The State is not akin to school districts or units of local government. *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 481 N.E.2d 709.

Because the statute does not specifically refer to the State and does not have affirmative statutory language imposing liability, I would reverse the judgment.