Docket No. 82556–Agenda 10–September 1997.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHNNY NEAL, JR., Appellant.

Opinion filed November 20, 1997.

JUSTICE HARRISON delivered the opinion of the court:

The issue in this appeal is whether the defendant, Johnny Neal, Jr., is entitled to relief under the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1994)) or the 
habeas corpus
 provisions of the Code of Civil Procedure (735 ILCS 5/10–101 
et seq. 
(West 1994)) on the grounds that he was convicted of murder and armed robbery and sentenced to death without having first received a fitness hearing under section 104–21(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104–21(a)). Citing this court's decisions in 
People v. Brandon
, 162 Ill. 2d 450 (1994), 
People v. Gevas
, 166 Ill. 2d 461 (1995), 
People v. Kinkead
, 168 Ill. 2d 394 (1995), 
People v. Birdsall
, 172 Ill. 2d 464 (1996), and 
People v. Nitz
, 173 Ill. 2d 151 (1996), defendant contends that he was entitled to such a hearing because he was taking Thorazine, a psychotropic medication, under medical direction prior to his trial. Following an evidentiary hearing, the circuit court denied defendant's claims. Because defendant's claims involved a judgment imposing a sentence of death, defendant appealed directly to this court. 134 Ill. 2d R. 651(a).

The judgment attacked in defendant's post-conviction petition dates back to the early 1980s. Defendant was originally charged in a criminal information in the circuit court of Lake County with three counts of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9–1(a)(1) through (a)(3)), one count of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18–2(a)) and one count of home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12–11). These charges were filed after defendant, a convicted felon on parole, bludgeoned a woman to death in her home during a robbery that netted $25.

The home invasion count was nol-prossed by the State prior to trial, and a jury found defendant guilty of murder and armed robbery. In a separate sentencing hearing before the same jury, defendant was found eligible for the death penalty under sections 9–1(b)(6)(a) through (c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9–1(b)(6)(a) through (b)(6)(c)). In the second phase of sentencing, at which evidence in aggravation and mitigation was presented, the jury unanimously decided that there were no mitigating factors to preclude the imposition of the death penalty.

The trial court sentenced defendant to death on the murder conviction and imposed an extended-term sentence of 60 years' imprisonment on the conviction for armed robbery. Defendant then appealed directly to this court under section 4(b) of article VI of the Constitution of Illinois (Ill. Const. 1970, art. VI, §4(b)) and under our Rule 603 (134 Ill. 2d R. 603). We affirmed (
People v. Neal
, 111 Ill. 2d 180 (1985)), and the United States Supreme Court denied review (
Neal v. Illinois
, 476 U.S. 1165, 90 L. Ed. 2d 733, 106 S. Ct. 2292 (1986)).

Defendant subsequently filed a petition for post-conviction relief, claiming,
 inter alia
, that he was denied effective assistance of counsel at trial by his attorney's failure to investigate or present available evidence in mitigation at his death penalty hearing and by his attorney's failure to object to prosecutorial argument at sentencing. Defendant's petition was dismissed without a hearing. This court affirmed. 
People v. Neal
, 142 Ill. 2d 140 (1990). In so doing, this court rejected an additional argument raised by defendant on appeal that the trial court should have allowed his request for appointment of a psychological expert before dismissing his petition because there were “substantial indications that trial defense counsel was ineffective due to her failure to develop and present mitigating evidence of [his] mental condition.” 
Neal
, 142 Ill. 2d at 145.

Defendant filed a second petition for post-conviction relief in 1991, once again challenging the competency of his trial counsel. In addition, defendant argued that his counsel for the initial post-conviction proceeding had been incompetent for failing to present additional evidence of his trial lawyer's incompetence. The circuit court dismissed this petition, and defendant filed no appeal.

Defendant next brought a petition for federal 
habeas corpus
 in the United States District Court for the Northern District of Illinois. The principal ground on which he sought relief was that his trial attorney rendered ineffective assistance of counsel at his sentencing hearing by failing to conduct a full investigation of his personal and psychiatric history. The district court rejected this claim, and the United States Court of Appeals, Seventh Circuit, affirmed, holding that the state courts had not been unreasonable in concluding that defendant's trial lawyer had been competent. 
Neal v. Gramley
, 99 F.3d 841 (7th Cir. 1996).

While the federal proceeding was underway, defendant initiated this, his third petition for post-conviction relief, in state court. In his petition, defendant sought relief under the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1994)) and the 
habeas corpus
 provisions of the Code of Civil Procedure (735 ILCS 5/10–101 
et seq. 
(West 1994)). The basis for his claim now was that he was denied his right to a fitness hearing under section 104–21(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104–21(a)), which provided that a “defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication.”
(footnote: 1) Defendant asserted that he fell within the terms of this statute because he took Thorazine, a psychotropic drug, under medical direction for a period of approximately nine weeks during his pretrial incarceration. Because he did not receive the fitness hearing specified by the statute, defendant asserted that his convictions and sentences should be reversed and that he should be granted a new trial. In the alternative, defendant contended that he was entitled to a writ of 
habeas corpus
 discharging him from custody under the Code of Civil Procedure (735 ILCS 5/10–101 
et seq. 
(West 1994)) because the failure to afford him a fitness hearing under the statute rendered his subsequent convictions and sentences void.

The State filed a response to defendant's petition and moved for its dismissal. The circuit court denied the State's motion to dismiss and ordered an evidentiary hearing, which was held in late November of 1996. Stipulations presented to the circuit court established that defendant was originally arrested in late August of 1982. A suppression hearing was held in his case on November 12, 1982, and his trial commenced on January 5, 1983.

Between September 1, 1982, shortly after his arrest, and November 4 or 8, 1982, just before his suppression hearing, defendant was prescribed and took the psychotropic drug Thorazine. His original dosage was 25 milligrams twice a day, but this was increased to 25 milligrams three times a day on September 13, 1982, after defendant complained to a nurse of back, neck and tooth pain; bad dreams; seeing shadows move on his cell walls; and feeling that he was not alone in his cell.

Over defendant's objection, the State presented testimony from Dr. Henry W. Lahmeyer, a psychiatrist who testified as an expert in pharmacology, psychiatry and medicine. Dr. Lahmeyer is on the board of advisors of SmithKline, the primary manufacturer of the drug, and has extensive knowledge of its development, use, and chemical properties.

Dr. Lahmeyer told the court that the average low dose of Thorazine for psychosis is 300 milligrams per day. An average high dose for psychosis is approximately 2,000 milligrams per day. According to Dr. Lahmeyer, a dose of 50 or 75 milligrams per day, which is what defendant took, is very low. A dose of 50 milligrams per day would be expected to make the recipient more tranquil, make his mouth dry, and produce antinausea effects. A 75-milligram-per-day dosage would have comparable effects.

The doctor would not expect any withdrawal symptoms from discontinuing a low dose of the medication and stated that an individual who took the drug in the quantity and for the duration experienced by defendant, then stopped taking the drug completely, would be expected to suffer no effects other than a marginally more active bowel and a small increase in awareness. According to Dr. Lahmeyer, Thorazine does not remain in the human body long. He testified that 48 hours after being discontinued, the drug would no longer have any biological effect on a patient.

On cross-examination, Dr. Lahmeyer stated that a 75-milligram-per-day dosage might impair mental abilities, but he regarded that as unlikely. He told the court that psychotic symptoms from Thorazine are rare and that persons taking Thorazine generally improve their cognitive ability.

As previously indicated, the circuit court denied defendant's post-conviction petition. Although the court acknowledged the requirements of section 104–21(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 104–21(a)), it determined that the statute was not violated here because defendant's ingestion of Thorazine was not proximate in time to his trial and there was no scientific basis to believe that defendant was affected by the Thorazine during his trial or sentencing hearing. This appeal followed.

The interpretation and application of section 104–21(a) have been addressed by this court no fewer than eight times over the past three years. See 
People v. Brandon
, 162 Ill. 2d 450 (1994); 
People v. Gevas
, 166 Ill. 2d 461 (1995); 
People v. Kinkead
, 168 Ill. 2d 394 (1995); 
People v. Birdsall
, 172 Ill. 2d 464 (1996); 
People v. Nitz
, 173 Ill. 2d 151 (1996); 
People v. Britz
, 174 Ill. 2d 163 (1996); 
People v. Kidd
, 175 Ill. 2d 1 (1996); 
People v. Burgess
, 176 Ill. 2d 289 (1997).

In 
Brandon
, the first in this series of cases, our court construed the statute to mean precisely what it says: a defendant receiving psychotropic medication under medical direction is entitled to a fitness hearing. If a defendant is entitled to such a hearing under the statute and his attorney does not request one, the attorney has not rendered effective assistance of counsel, and the defendant must be given a new trial.

Brandon
 was subsequently followed in 
Gevas
. In
 Gevas
, unlike 
Brandon
, there was no issue of ineffective assistance of counsel. The defendant's attorney asked for a fitness hearing and presented evidence that defendant was being treated with psychotropic medications. The trial court, however, refused to investigate further, and the fitness hearing required by statute was never held. Noting the due process implications of the trial court's actions and the inherent difficulties in evaluating a defendant's fitness retroactively, this court held that the defendant's convictions and sentence had to be reversed and the cause remanded to give the State the opportunity to try defendant again.

Four months after 
Gevas
 was handed down, this court decided 
Kinkead
. 
Kinkead
 adhered to the holdings of 
Brandon
 and 
Gevas
, but found that the record was not sufficient to enable the court to evaluate whether the administration of psychotropic medication to the defendant was medically significant. Accordingly, it ordered a limited remand to the circuit court for the purpose of conducting an inquiry into the factual circumstances surrounding defendant's use of the medication.

After 
Kinkead
 came 
Birdsall.
 
Birdsall
 reviewed our prior decisions in
 Brandon
, 
Gevas
 and
 Kinkead
, reaffirming that:

“an accused who is taking psychotropic drugs under medical direction at or near the time of trial or sentencing is entitled to a fitness hearing under section 104–21(a). 
Brandon
, 162 Ill. 2d 450; 
Gevas
, 166 Ill. 2d 461; 
Kinkead
, 168 Ill. 2d 394. Consistent with principles of due process, if an accused who is entitled to a fitness hearing is not accorded such hearing before being criminally prosecuted or sentenced, the conviction ordinarily must be reversed and the cause remanded for further proceedings. 
Gevas
, 166 Ill. 2d 461; see also
 Brandon
, 162 Ill. 2d 450; 
Drope v. Missouri
, 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896.” 
Birdsall
, 172 Ill. 2d at 476.

Based on these principles, the court held that a criminal defendant who had been given 50-milligram doses of Thorazine, plus additional medications, during the time of his prosecution and sentencing should have been granted a fitness hearing under section 104–21(a). Because no such hearing was requested by defendant's attorney or ordered by the trial court, this court reversed and remanded for a new trial. In so doing, we expressly rejected the State's request for a more limited preliminary remand for a hearing as to the properties of the drug in question, whether it was properly prescribed, and whether the medication, in the dose administered, could have affected the defendant's ability to understand the nature and purpose of the proceedings and to assist in his defense. 
Birdsall
, 172 Ill. 2d at 479-80.

On the same day we issued our opinion in 
Birdsall
, this court also decided 
People v. Nitz
, 173 Ill. 2d 151 (1996). 
Nitz 
was a proceeding under the Post-Conviction Hearing Act, as is the case before us today, while 
Birdsall
 involved a direct appeal, but the result was the same. In 
Nitz
, as in 
Birdsall
, this court held that under 
Brandon
, 
Gevas
, and 
Kinkead
, a defendant who received psychotropic medication under medical direction during the course of the criminal proceedings against him is entitled to a statutory fitness hearing, and if he is not given one, the appropriate remedy on review is to reverse and remand for a new trial. The question of the medication's nature and properties, its dosage, and whether it actually affected defendant's ability to understand and participate in his defense cannot be determined after the fact. 
Nitz
, 173 Ill. 2d at 163-64.

Section 104–21(a) next came before this court in 
People v. Britz
, 174 Ill. 2d 163 (1996), another post-conviction proceeding. In that case the court reaffirmed
 Brandon
,
 Gevas
, 
Kinkead
, 
Birdsall
 and
 Nitz
, but found them inapplicable because the medication defendant had taken was not psychotropic. It consisted of Selsun lotion and unspecified medication for a “nervous stomach” and blurring or blurred vision. Because the court believed that the fitness hearing mandated by section 104–21(a) was limited only to situations where the defendant had taken psychotropic drugs or medications that have effects like psychotropic drugs, the court concluded the failure to afford defendant such a hearing did not entitled him to post-conviction relief. A special concurrence supported the majority's judgment, but rejected the notion that the provisions of section 104–21(a) were applicable only where the medication is psychotropic in nature. Instead, the special concurrence based its result on the fact that the medication at issue here had not been administered “proximate in time to the trial or entry of a guilty plea and sentencing.” 
Britz
, 174 Ill. 2d at 203 (Harrison, J., specially concurring).

The next case to discuss section 104–21(a) after 
Britz
 was 
People v. Kidd
, 175 Ill. 2d 1 (1996). 
Kidd
 reached this court on direct appeal following the defendant's conviction for murder and sentence of death. As one of his grounds for relief, the defendant contended that he had taken medication under medical direction prior to trial and that his attorney was ineffective for having failed to seek a fitness hearing under section 104–21(a).

In rejecting this claim, the majority on this court noted that the only medication the defendant was taking during the relevant time period was Dilantin, a medication prescribed for the treatment of epilepsy. Holding that Dilantin did not constitute a psychotropic medication within the meaning of section 104–21(a), the majority concluded that under 
Britz
, defendant was not entitled to a fitness hearing and that his attorney was not ineffective for having failed to seek one. 
Kidd
, 175 Ill. 2d at 17-19. As in 
Britz
, however, the majority did not question the fundamental proposition set forth in
 Brandon
 and the cases that followed that when a defendant who was entitled to a fitness hearing did not receive one, his conviction and sentence cannot stand, and a new trial must be ordered.

Under the foregoing line of authorities, the defendant in the case before us today would clearly have been entitled to post-conviction relief. There is no dispute that Thorazine, the drug he was taking, is a psychotropic medication. Although the dosage was small, it was no smaller than the dosage administered to the defendant in 
Birdsall
. Although the dosage was discontinued prior to the start of the actual trial, the timing of the dosage was comparable to the situation in
 Gevas
, where the record showed that the defendant was being treated with psychotropic medication until just over a month before he pleaded guilty and requested the death penalty and just over two months before he again pleaded guilty and was sentenced. 
Gevas
, 166 Ill. 2d at 469. Moreover, in contrast to the situation in 
Britz
, where the medication was not administered during a period of time when defendant's decisionmaking or assistance was necessary to prepare for trial, the drug therapy in this case continued until just before the date of defendant's suppression hearing.

When the circuit court was presented with this evidence during the post-conviction proceeding, what it should have done under 
Brandon
, 
Gevas
,
 Kinkead
, 
Birdsall
, 
Nitz
, 
Britz
 and 
Kidd
 was to vacate defendant's conviction and sentence and grant him a new trial. Making an after-the-fact determination as to the effect of the medication on defendant's fitness, as the court did here, was improper.

After the trial court entered its judgment and defendant initiated his appeal, our court issued its opinion in
 People v. Burgess
, 176 Ill. 2d 289 (1997). In 
Burgess
 we abandoned our prior view that retrospective fitness determinations were always improper. Instead, we held that a defendant who has been denied his right to a fitness hearing under section 104–21(a) is not entitled to a new trial if evidence subsequently presented to the court in a post-trial proceeding establishes that the defendant did not, in fact, suffer any impairment as a result of his ingestion of psychotropic medication. 
Burgess
, 176 Ill. 2d at 302-04.

As a general rule, this court's decisions apply retroactively to causes pending at the time they are announced, including cases pending on direct review. 
Miller v. Gupta
, 174 Ill. 2d 120, 128 (1996). We must therefore ascertain the effect of 
Burgess
 on the matter before us today.

Unlike this case, 
Burgess
 was not a proceeding under the Post-Conviction Hearing Act. The post-trial hearing on defendant's fitness was conducted pursuant to a remand ordered by this court while the matter was pending on direct review of defendant's conviction and sentence. That procedural difference, however, is not significant. Once one accepts the proposition that fitness can be assessed after the fact, as a majority of this court did in 
Burgess
, it does not matter whether the retrospective fitness hearing was convened pursuant to a remand order on direct review or whether it was conducted in connection with an action under the Post-Conviction Hearing Act.

While the procedural context of the hearing does not matter, its timing may. In 
Burgess
 the fitness hearing was conducted approximately one year after the defendant's trial and sentencing. 
Burgess
, 176 Ill. 2d at 299. Where the delay in conducting the hearing would exceed a year, however, the difficulties associated with retrospective fitness determinations are more problematic. In various cases involving such delays, the United States Supreme Court concluded that a retrospective fitness determination could not adequately protect the defendant's due process rights. Instead, it opted to vacate the judgment of conviction and remand for a new trial. See 
Dusky v. United States
, 362 U.S. 402, 403, 4 L. Ed. 2d 824, 825, 80 S. Ct. 788, 789 (1960) (
per curiam
) (reverse and remand where over a year had passed since trial); 
Pate v. Robinson
, 383 U.S. 375, 387, 15 L. Ed. 2d 815, 823, 86 S. Ct. 836, 843 (1966) (reverse and remand where six years had passed since trial); 
Drope v. Missouri
, 420 U.S. 162, 182-83, 43 L. Ed. 2d 103, 119-20, 95 S. Ct. 896, 909 (1975) (reverse and remand where six years had passed since trial).

In the case before us today, approximately 15 years have elapsed since defendant's trial and sentencing. That is a far longer interval than was involved in any of the foregoing decisions. The passage of time, however, is not dispositive. The federal decisions do not establish a bright line rule. Rather than imposing a flat ban on retrospective fitness determinations at delayed post-conviction hearings, they represent an admonition as to the inherent difficulty of retrospectively determining an accused's competency to stand trial (see 
Conner v. Wingo
, 429 F.2d 630, 639 (6th Cir. 1970)), a principle we well appreciate. See 
Nitz
, 173 Ill. 2d at 164.

Consistent with the United States Supreme Court's admonition, we cannot dispute that retrospective fitness determinations will normally be inadequate to protect a defendant's due process rights when more than a year has passed since the original trial and sentencing. In exceptional cases, however, circumstances may be such that the issue of defendant's fitness or lack of fitness at the time of trial may be fairly and accurately determined long after the fact. In such cases, 
Burgess
 will apply, and a defendant will not automatically be entitled to have his original conviction and sentence automatically set aside for a new trial.

 We believe this to be such a case. In the matter before us today, the circuit court held, based on the testimony of Dr. Lahmeyer and the other evidence presented, that the timing and dosage of the psychotropic medication ingested by defendant was such that there was “[no] reasonable scientific basis to believe that he was affected by those psychotropic drugs during trial or sentencing.” This situation is directly analogous to that present in 
Burgess
, where, as here, the evidence showed that the medication ingested by the defendant could not have had any effect on his fitness. 
Burgess
, 176 Ill. 2d at 303-04. Although the court in 
Burgess
 was able to assess the evidence closer in time to the original proceeding, that is of no consequence given the nature of the proof. If the chemical properties of medication are such that their effects could accurately be assessed in light of a defendant's known medical history, as was the case here, it would not matter whether the evaluation followed the original trial and sentencing by 15 days or 15 years. The result would be the same.

A trial court's determinations regarding a post-conviction petition will not be disturbed on review unless they are manifestly erroneous. 
People v. Lear
, 175 Ill. 2d 262, 268 (1997). No manifest error was committed here. The trial court's determinations were amply supported by the record. Under these circumstances, and in accordance with 
Burgess
, the circuit court was therefore correct in making a retrospective determination as to whether the medication taken by defendant rendered him unfit. The court was likewise correct in holding that defendant was not entitled to a new trial based on the failure to afford him a hearing under section 104–21(a) prior to his original trial and sentencing.

In his reply brief, the defendant contends that if we apply 
Burgess
 to this case, as we have, we should remand to give him the opportunity to present additional evidence regarding his fitness at the time of this original trial. This we decline to do. If defendant wanted to contest the effects of the Thorazine, he could have done so at the post-conviction hearing when the State put on its case regarding the properties of Thorazine and the effects it had on him. Defendant's counsel rejected this course, opting instead to make the legal argument that under this court's prior precedent, the failure to afford defendant a fitness hearing under section 104–21(a) prior to his original trial and sentencing automatically entitled him to a new trial, and no evidence should be allowed on the question of defendant's past fitness. This was a sound trial strategy that counsel was not ineffective for attempting. If not for the advent of 
Burgess
, it would have succeeded. Having made this strategic choice, however, the defense must now abide by its consequences.

Just as we agree with the circuit court's conclusion that defendant was not entitled to a new trial on the grounds that he was denied his right to a fitness hearing under section 104–21(a), we also agree that defendant was not entitled to relief under the 
habeas corpus
 provisions of the Code of Civil Procedure. 
Habeas corpus
 provides relief only on the grounds specified in section 10–124 of the Code (735 ILCS 5/10–124 (West 1994)). 
Faheem-El v. Klincar
, 123 Ill. 2d 291, 294 (1988). Detailing those grounds here is not necessary. We think it sufficient to say that none of the enumerated grounds is even arguably applicable to this case.

For the foregoing reasons, we affirm the judgment of the circuit court denying defendant's petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122–1 
et seq.
 (West 1994)) and the Code of Civil Procedure (735 ILCS 5/10–101 
et seq. 
(West 1994). We direct the clerk of this court to enter an order setting Tuesday, March 17, 1998, as the date on which the sentence of death shall be carried out. The defendant shall be executed in the manner provided by law. 725 ILCS 5/119–5 (West 1996). The clerk of this court shall send a certified copy of the mandate to the Director of Corrections, the warden of Stateville Correctional Center, and to the warden of the institution where the defendant is now confined.

Affirmed.

FOOTNOTES
1:
The statute has been amended twice in recent years and no longer exists in this form. The General Assembly initially changed the law to provide, among other things, that no fitness hearing is required unless the court finds that there is a 
bona fide
 doubt as to the defendant's fitness. Pub. Act 89–428, §605, eff. December 13, 1995, amending 725 ILCS 5/104–21(a) (West 1994). It subsequently rewrote the statute to provide that “[a] defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications.” Pub. Act 89–689, §90, eff. December 31, 1996. 725 ILCS 5/104–21(a) (West 1996). Neither of these amendments is applicable here. 
People v. Nitz
, 173 Ill. 2d 151, 162-63 (1996).