THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SIDNEY PERRY, Defendant-Appellant.

First District (5th Division)   No. 1—96—0037

Opinion filed September 10, 1999.

Rita A. Fry, Public Defender, of Chicago (Elyse Krug Miller, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Robert B. Berlin, and Jean T. McGuire, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

The sole issue to be addressed in this matter is whether the record supports a remand for a retrospective fitness hearing in accordance with the language of the 1994 version of the psychotropic medication statute, section 104—21(a) of the Code of Criminal Procedure of 1963 (the Code) (725 ILCS 5/104—21(a) (West 1994)) and the opinion of the Illinois Supreme Court in *People v. Kinkead*, 182 Ill. 2d 316 (1998) (*Kinkead* II).

We find that a retrospective fitness hearing is appropriate in the present case based on the evidence presented in the record.

The procedural history of this appeal began in 1995 when a jury found defendant Sidney Perry guilty of first degree murder for the shooting death of William Yousef, of armed robbery of William Yousef, and of armed robbery of Hani Hamad. On direct appeal, defendant raised several issues, including his fitness to stand trial based on the 1994 version of the Code. This court considered the issue under the amended version of the Code in effect December 31, 1996 (725 ILCS 5/104—21(a) (West 1996)) and concluded that reversal was not required in *People v. Perry*, 292 Ill. App. 3d 705 (1997). On October 6, 1998, the supreme court entered a supervisory order directing this court to vacate its judgment and reconsider it in light of *Kinkead* II. Pursuant to that mandate, we vacated our judgment in No. 1—96—0037, applied the 1994 version of the Code, reversed defendant's convictions, and remanded this cause to the circuit court for a new trial. *People v. Perry*, 303 Ill. App. 3d 138 (1998). By supervisory order entered on June 2, 1999, the supreme court denied the State's petition for leave to appeal, vacated the judgment in No. 1—96—0037, and directed this court "to conduct a case-specific inquiry in order to determine whether the record supports a remand for a retrospective fitness hearing." Thereafter, pursuant to this court's briefing schedule, the parties submitted their respective positions and arguments on this issue.

On September 12, 1994, defendant was arrested for crimes occurring on the same day. On September 5, 6 and 7, 1995, a trial was held during which defendant testified. On September 7, 1995, after the jury issued its verdicts, the trial court ordered a presentence investigation

report and continued the case to October 18, 1995, for sentencing. On September 8, 1995, defendant authorized the release of information from the Illinois State Psychiatric Institute for the purpose of his presentence investigation report.

The presentence report was filed in the clerk's office of the circuit court on October 18, 1995. The report revealed that defendant was born on November 17, 1966, and, thus, was 28 years old at the time of trial. The report further revealed that defendant had five prior felony convictions and a history of psychiatric treatment at five different institutions (Madden Mental Health Center, Illinois State Psychiatric Institute, Saint Anthony Hospital, Loretto Hospital, and Chicago Reed Mental Health Center). Defendant maintained that he is a drug addict and "crack cocaine, marijuana, and acid are his drugs of choice." Defendant further stated that "incarceration is his only reason for not using drugs at the present time." The summary portion of the report stated that defendant "is a Schizophrenic with an extensive psychiatric history," as supported by the documents from four of the five institutions in which defendant was treated.

A fitness hearing was held on November 2, 1995, to consider defendant's fitness for sentencing. The sole witness was Dr. Dawna Gutzmann, a psychiatrist at the Forensic Clinical Services for the Circuit Court of Cook County. Dr. Gutzmann conducts psychiatric evaluations pursuant to court order. Dr. Gutzmann examined defendant on October 19, 1995, and opined that defendant was fit for sentencing. Dr. Gutzmann's written report, which is dated October 23, 1995, and which was submitted to the circuit court, stated that "defendant demonstrated an understanding of the nature and purpose of the proceedings against him, and was knowledgeable regarding the roles of various courtroom personnel. Furthermore, he demonstrated a capacity to assist counsel with regard to aggravating and mitigating factors."

At the fitness hearing, Dr. Gutzmann testified that, as stated in her written report, defendant was being medicated with lithium carbonate at the time she conducted the examination. Dr. Gutzmann's report stated that "Lithium carbonate is used as a mood stabilizer." Dr. Gutzmann testified that she never personally administered any lithium carbonate to defendant and she has no knowledge of whether defendant received any lithium carbonate during his three-day trial on September 5, 6 and 7.

After the testimony of Dr. Gutzmann, defense counsel argued:

"The only thing I'd say is as far as we know, [defendant] sits here today, we don't know if he was medicated today. And we don't know if he was medicated during the 3 days of trial. I mean it's

possible, considering the inefficiency of certain parts of the Cook County Department of Corrections, I think you would—in all of our common experiences, we have seen situations where people being held in custody have not received their medication. It's possible that he wasn't medicated at the trial. It's possible that as he sits here today, he's not medicated. Which is why he said he didn't feel good."

The trial court then ruled that defendant was fit for sentencing, stating that "[t]here is not a scintilla of evidence to indicate that he is not [fit]."

The sentencing hearing was held four days later, on November 6, 1995. Defense counsel argued that defendant was currently being treated with several medications (Thorazine, Haldol, lithium and Cogentin) and reiterated defendant's psychiatric history as stated in the presentence report. The trial court stated:

"The first time we became aware, the first time, [defense counsel], you became aware that he was being treated with anything was after, repeat, after the jury had rendered their decision in this case.

We might also state that throughout these proceedings which have been in this Courtroom since [defendant] has been coming to this Courtroom since October of 1994, he has on each and every occasion demonstrated politeness, cooperation and a full and complete understanding of each and every stage of these proceedings.

Let me finish.

We now find after, after the verdict has been rendered that [defendant] was receiving some forms of medication. We have also heard from a doctor who is a psychiatrist who has testified here in open Court that he is clearly fit for sentencing in this matter.

She has also indicated that in her opinion he is able to cooperate with his attorney and that he understand[s] these proceedings.

Now, go ahead."

On this appeal, defendant asserts that the record does not support a remand for a retrospective fitness hearing because it establishes that he was taking psychotropic medication at or near the time of trial. Defendant argues that his taking psychotropic medication at or near the time of trial is demonstrated by (1) his incarceration in the psychiatric unit of the jail; (2) his discharge from the psychiatric department at Loretto Hospital only 11 days before his arrest; (3) his psychiatric history, which details his prior hospital stays, drug treatments, and various medical diagnoses, including schizophrenia; and (4) the trial court's comments at the November 6, 1995, sentencing hearing where the court stated, in part, that only after the verdict had been rendered "we now find *** that [defendant] was receiving some forms of medica-

tion." Defendant maintains that a retrospective hearing would not be appropriate because he should have had a fitness hearing before his trial and nearly four years have passed since his trial.

The State contends that the record supports remandment for a retrospective fitness hearing to determine (1) if, in fact, there is evidence of defendant's ingestion of psychotropic medication proximate to the time of his trial and (2) if defendant was found to have been ingesting psychotropic drugs at the time of his trial, whether he suffered any impairment as a result. The State argues that the record does not establish that defendant was ingesting psychotropic medication at the time of his trial. Even assuming that defendant could show that he ingested psychotropic medication proximate to the time of trial, the State maintains that the record establishes that such ingestion did not render him unfit to stand trial based on the posttrial fitness hearing, defendant's ability to cooperate with defense counsel, defendant's testimony at trial, and the trial court's observation of defendant's fitness during trial.

■ Under the 1994 version of the Code, a defendant was entitled to a fitness hearing where the defendant was "receiving psychotropic drugs or other medications under medical direction." 725 ILCS 5/104—21(a) (West 1994). In a series of cases construing this provision, the supreme court held that a defendant who was taking psychotropic drugs under medical direction at or near the time of trial was entitled to a fitness hearing and the failure to hold such a hearing automatically required reversal of defendant's conviction and remandment for further proceedings. *People v. Brandon*, 162 Ill. 2d 450 (1994); *People v. Gevas*, 166 Ill. 2d 461 (1995); *People v. Birdsall*, 172 Ill. 2d 464 (1996); *People v. Nitz*, 173 Ill. 2d 151 (1996).

The bright-line, automatic reversal rule of the *Brandon* line of cases has since been modified and a case-by-case approach to consider the specific factual circumstances regarding a defendant's fitness to stand trial is now employed. *Kinkead* II, 182 Ill. 2d at 340.

A defendant who is denied his right to a fitness hearing is not automatically entitled to a new trial if evidence presented to the trial court in a posttrial proceeding establishes that the defendant did not suffer impairment as a result of his ingestion of psychotropic medication. *Kinkead* II, 182 Ill. 2d at 338-40, citing *People v. Cortes*, 181 Ill. 2d 249 (1998), *People v. Neal*, 179 Ill. 2d 541 (1997), and *People v. Burgess*, 176 Ill. 2d 289 (1997); see also *People v. Kalwa*, 306 Ill. App. 3d 601 (1999); *People v. Mayoral*, 299 Ill. App. 3d 899 (1998); *People v. Hill*, 297 Ill. App. 3d 500 (1998).

■ In the present case, the record does not establish that defendant actually was taking psychotropic medication at the time of his

trial. In essence, defendant urges this court to speculate or infer that defendant was taking psychotropic medication at or during his trial from certain circumstances, such as his incarceration in the psychiatric unit of the jail, his psychiatric history, his discharge from the hospital 11 days before the commission of the crimes, and the trial court's comments at the sentencing hearing. The best indication of his taking such medication may be the trial court's comment at the November sentencing hearing:

"The first time we became aware, the first time, Mr. Jordan [defense counsel], you became aware that he was being treated with anything was after, repeat, after the jury had rendered their decision in this case.

\* \* \*

We now find after, after the verdict has been rendered that [defendant] was receiving some forms of medication."

Even this statement, however, is susceptible to the question of whether the "some forms of medication," as stated by the trial court, refers to psychotropic medication so as to trigger the possible entitlement to a fitness hearing. Moreover, defense counsel at the posttrial fitness hearing for sentencing purposes acknowledged that "we don't know if he [defendant] was medicated during the 3 days of the trial."

Second, assuming evidence exists outside the present record to show that defendant was taking psychotropic medication, a new trial is not required where the record shows that the defendant was not impaired by the ingestion of the medication. "[A] defendant who has been denied his right to a fitness hearing under section 104—21(a) is not entitled to a new trial if the evidence subsequently presented to the court in a post-trial proceeding establishes that the defendant did not, in fact, suffer any impairment as a result of his ingestion of psychotropic medication." *Neal*, 179 Ill. 2d at 552. The record is devoid of any evidence to demonstrate that defendant suffered any impairment as a result of the alleged ingestion of psychotropic medication. Rather, the record reveals that defendant testified at trial; the trial court observed that defendant demonstrated "cooperation and a full and complete understanding of each and every stage of these proceedings" beginning at the pretrial stage (October 1994) through trial (September 1995); and a posttrial fitness evaluation and hearing occurred within two months of defendant's trial.

In light of the specific facts of this case, we find that the most appropriate remedy is to remand the matter for the trial court to determine first whether there is evidence that defendant actually was ingesting psychotropic medication at a time proximate to his trial. If such evidence exists and establishes that defendant was taking such

medication at the relevant time, then the trial court should conduct a retrospective fitness hearing. See *Neal*, 179 Ill. 2d at 553-54; *Hill*, 297 Ill. App. 3d at 517.

Remanded with directions.

THEIS and ZWICK, JJ., concur.