THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD STOKES, Defendant-Appellant.

First District (5th Division)   No. 1—00—2616

Opinion filed August 16, 2002.

Steven H. Jesser, of Northfield, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Jon J. Walters, and Ash L. Sawkar, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following the dismissal by the trial court of his supplemental petition for postconviction relief under the Illinois Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 2000)), Donald Stokes filed this appeal pursuant to Illinois Supreme Court Rule 651(a) (103 Ill. 2d R. 651(a)). Stokes was charged with possession of a stolen motor vehicle. 625 ILCS 5/4—103(a)(1) (West 1994). He entered a plea of guilty which, in conjunction with his criminal history, resulted in his being sentenced as a Class X offender to consecutive eight-year

sentences, less a credit of 138 days for time served. In his petition for postconviction relief, Stokes attacks the information and his conviction dealing with the possession of a stolen motor vehicle. For the reasons that follow, we affirm the judgment of the circuit court.

## BACKGROUND

Stokes was charged with possession of a stolen motor vehicle. While on bond awaiting trial on that charge, Stokes was also charged with burglary under a separate indictment. Stokes pled guilty on January 5, 1995, to the charge of possession of a stolen motor vehicle. At the plea hearing, Stokes stated that he was pleading guilty of his own free will, was waiving trial by jury, had been a user for 21 years of drugs including heroin and cocaine, and had been taking the prescription drugs Haldol and Cogentin. Stokes also indicated he had not taken heroin or cocaine for three months prior to the entry of the plea of guilty. Stokes further indicated that he comprehended the nature and consequences of the plea. In aggravation, the trial court was presented with evidence of Stokes's previous convictions of robbery, armed violence, aggravated battery and possession of a stolen motor vehicle. In mitigation, Stokes told the trial court that he made lots of mistakes while using drugs. Stokes also begged the trial court for mercy. Stokes was sentenced on that charge to eight years in the Illinois Department of Corrections. On the burglary indictment, before a different judge, Stokes pled guilty and was sentenced to eight years. The sentences were to be served consecutively.

Stokes filed a *pro se* postconviction petition which was supplemented after the public defender was appointed to represent him. In the supplemental petition, Stokes argues that his guilty plea was involuntary and must be vacated because he was allowed to enter his plea and waive his right to trial by jury without a fitness hearing. Stokes argued that the need for a fitness hearing was because he was ingesting daily doses of psychotropic drugs at or near the time of the plea of guilty. The People filed a motion to dismiss the supplemental petition. The trial court, assuming the claims of drug taking to be factual, held that Stokes had failed to make a substantial showing of the deprivation of a constitutional right. Specifically, the trial court reasoned that the right to a fitness hearing for a defendant who is medicated with psychotropic drugs is a statutory right and not a constitutional right. As a result, the trial court denied the supplemental petition for postconviction relief, declining to comment on the People's argument that the petition was untimely.

## ARGUMENTS BY THE PARTIES

Stokes argues that a party may challenge the constitutionality of a

statute at any time. He also argues that the statutes give him a right to a fitness hearing under circumstances where a defendant is taking psychotropic or other medications under medical direction. According to Stokes, the denial of a fitness hearing to establish psychotropic drug use and the resultant lack of a voluntary plea amounts to error. He seeks a decision from this court vacating the denial of the postconviction petition and remanding the matter back to the trial court. Alternatively, Stokes would like a new trial.

The People argue that the trial court properly dismissed the postconviction petition. The People claim that the trial court was correct in holding that the Post-Conviction Hearing Act does not recognize a constitutional right to a fitness hearing. Because Stokes's claim is statutory, rather than constitutional, it is not proper under the Post-Conviction Hearing Act. The People also argue that the only constitutional claim that is cognizable under the Act is ineffective assistance of counsel. 725 ILCS 5/104—21(a) (West 1994). Pointing to the fact that Stokes has not argued that the failure to request a fitness hearing was ineffective assistance, the People argue Stokes is not entitled to postconviction relief. The People argue that, even if this court were to entertain the issue, Stokes cannot show ineffective assistance because no Illinois court has held that the failure to hold a fitness hearing deprives a defendant of due process of law. Were we to entertain that, the People argue, the record shows that Stokes was fit to stand trial and that he understood what was happening to him at all times.

## ANALYSIS

■ The Post-Conviction Hearing Act provides a mechanism by which criminal defendants can assert that their convictions and sentences were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. *People v. Peeples*, 205 Ill. 2d 480, 509 (2002), citing 725 ILCS 5/122—1 *et seq.* (West 1996). A petition filed pursuant to the Post-Conviction Hearing Act is a collateral attack on a prior conviction and sentence. *People v. Mitchell*, 189 Ill. 2d 312, 321-22 (2000), citing *People v. Mahaffey*, 165 Ill. 2d 445, 452 (1995). The purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, nor could they have been, adjudicated previously upon direct appeal. *People v. Haynes*, 192 Ill. 2d 437, 464 (2000), citing *People v. Griffin*, 178 Ill. 2d 65, 72-73 (1997).

■ An evidentiary hearing on the petition is required only when the allegations of the petition, supported by the trial record and the

accompanying affidavits, make a substantial showing of a violation of a constitutional right. *Mitchell*, 189 Ill. 2d at 322, citing *People v. Hobley*, 182 Ill. 2d 404, 428 (1998). For purposes of determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in the supporting affidavits are taken to be true. *Mitchell*, 189 Ill. 2d at 322, citing *People v. Caballero*, 126 Ill. 2d 248, 259 (1989). If the circuit court determines that the petition should be dismissed without an evidentiary hearing, its judgment is subject to *de novo* review. *Mitchell*, 189 Ill. 2d at 322, citing *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

Stokes argues that he was denied due process of law when he did not receive a hearing to determine his fitness for trial while under psychotropic medication. The Illinois Supreme Court, in *People v. Britz*, 174 Ill. 2d 163, 198 (1996), adopted the definition of "psychotropic medications" found in the Mental Health and Developmental Disabilities Code, specifically:

> " 'Psychotropic medication' means medication whose use for antipsychotic, antidepressant, antimanic, antianxiety, behavioral modification or behavioral management purposes is listed in AMA Drug Evaluations, latest edition, or Physician's Desk Reference, latest edition, or which are administered for any of these purposes." 405 ILCS 5/1—121.1 (West Supp. 1995).

The *Mitchell* court also relied upon the definition given by the United States Supreme Court in *Washington v. Harper*, 494 U.S. 210, 108 L. Ed. 2d 178, 110 S. Ct. 1028 (1990), which held:

> " '[P]sychotropic drugs are "medications commonly used in treating mental disorders such as schizophrenia," the effect of which is "to alter the chemical balance in the brain, the desired result being that the medication will assist the patient in organizing his or her thought processes and regaining a rational state of mind." ' " *Mitchell*, 189 Ill. 2d at 324, quoting *Britz*, 174 Ill. 2d at 198, quoting *Washington*, 494 U.S. at 214, 108 L. Ed. 2d at 193, 110 S. Ct. at 1032.

■ Stokes pled guilty in 1995. At the time of the entry of his plea, the statute in effect provided as follows:

> "A defendant who is receiving psychotropic drugs or other medications under medical direction *is entitled* to a hearing on the issue of his fitness while under medication." (Emphasis added.) 725 ILCS 5/104—21(a) (West 1994).

That statute has been amended since the entry of Stokes's plea. The current version now provides that a defendant shall not be presumed unfit to stand trial solely by virtue of the fact that he is receiving psychotropic drugs. We must apply the version that was in effect at the time Stokes entered his guilty plea because that is when

his right, if any, to a fitness hearing would have accrued. *People v. Cortes*, 181 Ill. 2d 249, 275 n.2 (1998); *People v. Johns*, 285 Ill. App. 3d 849, 855-56 (1996); *People v. McKay*, 282 Ill. App. 3d 108, 115 (1996) (Where a defendant's right, if any, to a fitness hearing would have accrued prior to the effective date of the amendments to section 104—21(a), section 4 of the Statute on Statutes (5 ILCS 70/4 (West 1994)) mandates that the original version must be applied on appeal).

██ It is well settled that it is a violation of due process to prosecute a defendant who is unfit to stand trial. *People v. Vallo*, 323 Ill. App. 3d 495, 502 (2001), citing *People v. Murphy*, 72 Ill. 2d 421, 430 (1978). A defendant is fit to stand trial unless a mental or physical problem renders him unable to understand the nature and purpose of the proceedings against him or to aid in his defense. *Vallo*, 323 Ill. App. 3d at 502, citing 725 ILCS 5/104—10 (West 1994).

The dissent in *Mitchell* discusses the history of section 104—21 and its amendments. *Mitchell*, 189 Ill. 2d at 362-401 (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.). That dissent states that "case law dictated that the failure to hold the hearing necessitated reversal of the defendant's convictions and remandment for further proceedings, unless it could be established that defendant did not suffer mental impairment as a result of his ingestion of psychotropic medication." *Mitchell*, 189 Ill. 2d at 362 (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.), citing *People v. Neal*, 179 Ill. 2d 541 (1997); *People v. Burgess*, 176 Ill. 2d 289 (1997) (modifying *People v. Brandon*, 162 Ill. 2d 450 (1994)). This rule applied to cases on direct appeal as well as to those on collateral review. *Mitchell*, 189 Ill. 2d at 362 (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.), citing *Neal*, 179 Ill. 2d at 549 (modifying *People v. Nitz*, 173 Ill. 2d 151 (1996)).

As in the *Mitchell* dissent, a better understanding of the issues in the case *sub judice* is served by a brief look at the recent history of this issue before the Illinois Supreme Court. The Illinois Supreme Court entertained for the first time a challenge to a trial court's failure to hold a section 104—21 fitness hearing in *People v. Brandon*, 162 Ill. 2d 450 (1994). The *Brandon* court concluded "that section 104—21(a) 'evinces a recognition by the General Assembly that psychotropic medication is an important signal that a defendant may not be competent to stand trial.' " *Mitchell*, 189 Ill. 2d at 370 (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.), quoting *Brandon*, 162 Ill. 2d at 457. The *Brandon* court went on to "interpret[ ] the word 'entitled' to mean just that—if facts are brought to the court's attention that indicate that defendant is taking psychotropic drugs under medical direction, then the court does not have the discretion to

not hold the required hearing." *Mitchell*, 189 Ill. 2d at 370 (Freeman, J., dissenting, joined by Harrison, C.J., and McMorrow, J.), citing *Brandon*, 162 Ill. 2d at 459, citing *Pate v. Robinson*, 383 U.S. 375, 386, 15 L. Ed. 2d 815, 822, 86 S. Ct. 836, 842 (1966).

The Illinois Supreme Court next addressed section 104—21(a) in *People v. Gevas*, 166 Ill. 2d 461 (1995). "Relying on the decision in *Brandon*, the court concluded that the trial court's failure to hold the hearing necessitated reversal of the convictions and a new trial." *Mitchell*, 189 Ill. 2d at 372. "The [*Gevas*] court held that, by enacting 104—21(a), the General Assembly had 'equated the administering of psychotropic medication to a defendant with a *bona fide* doubt as to fitness to stand trial.' [Citation.] In so holding, the court noted that the legislature's concern in this area was substantial not only because such drugs signal that a defendant may not be competent to stand trial, but because these types of drugs can also 'have severe side effects which can affect a defendant during criminal proceedings.' " *Mitchell*, 189 Ill. 2d at 372-73, quoting *Gevas*, 166 Ill. 2d at 469-70.

The next time the Illinois Supreme Court was confronted with a defendant on psychotropic drugs who did not get a fitness hearing was in the case of *People v. Kinkead*, 168 Ill. 2d 394 (1995) (*Kinkead I*). *Kinkead* was a capital case wherein the Illinois Supreme Court rejected the notion that ingestion of psychotropic medications was just one factor in a court's *bona fide* doubt analysis. The *Kinkead I* court reasoned as follows:

"We believe that the legislature intended, through the plain language of the statute, to remove the determination of a defendant's fitness from the subjectivity of personal observation and place the question in the formal context of a fitness hearing. Psychotropic medications are potent drugs and their effect on the mind and behavior of an accused may not be easily determined or fully understood, particularly by nonmedical personnel. A fitness hearing provides the vehicle by which the court may ascertain whether the drugs are influencing the defendant's subjective decision regarding the pursuit of available defenses." *Kinkead*, 168 Ill. 2d at 410.

The issue returned in the capital case of *People v. Birdsall*, 172 Ill. 2d 464 (1996). *Birdsall* resulted in a new trial, based on the idea that due process principles operate to protect an accused from being prosecuted or convicted if he or she is not fit to stand trial. *Birdsall*, 172 Ill. 2d at 474-75. Based upon *Gevas* and the plain language of section 104—21(a), *Birdsall* again equated the ingestion of psychotropic medications with *bona fide* doubt of fitness to stand trial. *Birdsall*, 172 Ill. 2d at 475.

While *Birdsall* was being decided, the General Assembly stepped in and amended section 104—21(a) so that, effective December 13, 1995, the granting of a fitness hearing based on the defendant's treatment with psychotropic drugs is not required unless the court finds there is a *bona fide* doubt of the defendant's fitness. Though the amendment did not apply to *Birdsall*, the application of the amendment to future cases after the effective date of the statutory amendment was left up in the air. *Birdsall*, 172 Ill. 2d at 475 n.1.

Next came *People v. Nitz*, 173 Ill. 2d 151 (1996). This case is significant in that it is the first time our supreme court dealt with section 104—21(a) on collateral review. Nitz claimed in his petition for postconviction relief that the State withheld information that it was giving Nitz psychotropic medication throughout the course of his trial and sentencing. Nitz argued that withholding the fact that he was on psychotropic medication from the trial court deprived him of his constitutional rights. "As we have rejected any notion that a *nunc pro tunc* determination of fitness can provide the necessary reliability [citations], consistent with the reasoning and holdings in *Brandon*, *Gevas* and *Kinkead [I]*, reversal of defendant's convictions and sentence is required." *People v. Nitz*, 173 Ill. 2d 151, 164 (1996).

The next postconviction challenge came before the Illinois Supreme Court in *People v. Britz*, 174 Ill. 2d 163 (1996). Again the postconviction challenge was against the death penalty, unlike the case before us. The *Britz* court held that the statutory phrase "other medications under medical direction" within section 104—21(a) cannot plainly be understood because it was written with a specific provision followed by a general one. *Britz*, 174 Ill. 2d at 196-97. In that situation, the specific provision (psychotropic medications) and the general provision (other medications under medical direction) are deemed to be related to the same subject matter. *Britz*, 174 Ill. 2d at 196-97, citing *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992). Essentially, the *Britz* court, applying the doctrine of *esjusdem generis*, means that the "other medications under medical direction" mentioned in the statute must relate to and be interpreted like the psychotropic medication in their impact on the brain and body. The *Britz* court concluded that, "[b]ecause fitness to stand trial refers to a defendant's ability 'to understand the nature and purpose of the proceedings' against him or assist in his defense [citations], the legislature could only have intended that section 104—21(a) include medications capable of interfering with that ability." *Britz*, 174 Ill. 2d at 196-97, quoting *Kinkead I*, 168 Ill. 2d at 407; 725 ILCS 5/104—10 (West 1992). The *Britz* court found confusing the idea that a trial court might order a hearing because a given defendant was on a prescription medication that was not like a psychotropic medication.

The next case to discuss the psychotropic medication issue was *People v. Kidd*, 175 Ill. 2d 1 (1996). Applying the then-existing precedent, the court held that Kidd was not entitled to a fitness hearing and that Kidd's counsel could not have been found ineffective for failing to seek one pursuant to section 104—21(a). The *Kidd* court indicated that the case turned on whether Kidd was actually taking a psychotropic medication at the time of the trial and not that he simply had been taking that type of medication at some point in his medical history. The *Kidd* court was unwilling to extend the doctrine beyond a look at the defendant's medical and pharmaceutical status at the time of trial, unless there was some compelling reason. *Kidd* also supported the proposition that the defense counsel could not be held ineffective for failing to seek a hearing under section 104—21(a). *Kidd*, 175 Ill. 2d at 19.

In 1997, the issue of the application of section 104—21(a) arose in the case of *People v. Burgess*, 176 Ill. 2d 289 (1997). *Burgess* is another death penalty case in which the defendant was taking psychotropic medications during trial. The Illinois Supreme Court focused on the fact that "[t]he defendant never exhibited any obvious side effects" that "indicated any mental disfunctioning or disability, or any issue regarding fitness." *Burgess*, 176 Ill. 2d at 302. Because of this, the court indicated that "there will be some circumstances in which it can be said that the use of psychotropic medication did not affect the defendant's mental functioning in such a way that relief would be appropriate." *Burgess*, 176 Ill. 2d at 303. Though the Supreme Court had at times in the past applied an automatic reversal rule to these types of cases, it indicated in *Burgess* that "there are sufficient reasons to depart from our previous practice of automatic reversal and to make a case-specific inquiry into the psychotropic drugs administered to [a] particular defendant." *Burgess*, 176 Ill. 2d at 303.

The issue next arose in 1997 with the case of *People v. Neal*, 179 Ill. 2d 541 (1997). That case came before the Illinois Supreme Court as a petition for postconviction relief in a death penalty case in which the defendant was on a low dosage of the psychotropic medication Thorazine. It had been prescribed and the dosage adjusted when the defendant had complained of, among other symptoms, seeing shadows moving on the walls of his prison cell and a general feeling that he was not alone. *Neal*, 179 Ill. 2d at 546. At 15 years after conviction, Neal petitioned the court for postconviction relief, claiming that he was entitled to a section 104—21(a) hearing. The *Neal* court indicated that "[o]nce one accepts the proposition that fitness can be assessed after the fact, as a majority of [the Illinois Supreme] court did in *Burgess*, it does not matter whether the retrospective fitness hearing

was convened pursuant to a remand order on direct review or whether it was conducted in connection with an action under the Post-Conviction Hearing Act. While the procedural context of the hearing does not matter, its timing may." *Neal*, 179 Ill. 2d at 552-53. The *Neal* court went on to hold that "[c]onsistent with the United States Supreme Court's admonition[s in *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966), and *Drope v. Missouri*, 420 U.S. 162, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1975) (both reversed and remanded where six years had passed since trial)], we cannot dispute that retrospective fitness hearings normally will be inadequate to protect a defendant's due process rights when more than a year has passed since the original trial and sentencing. In exceptional cases, however, circumstances may be such that the issue of defendant's fitness or lack of fitness at the time of trial may be fairly and accurately determined long after the fact." *Neal*, 179 Ill. 2d at 553-54. Based upon the application of *Burgess*, the Illinois Supreme Court declined to automatically grant a section 104—21(a) hearing in *Neal*.

> "If the chemical properties of medication are such that their effects could accurately be assessed in light of a defendant's known medical history, as was the case here, it would not matter whether the evaluation followed the original trial and sentencing by 15 days or 15 years. The result would be the same." *Neal*, 179 Ill. 2d at 554.

The Illinois Supreme Court next addressed section 104—21(a) fitness hearings in *People v. Cortes*, 181 Ill. 2d 249 (1998). Cortes raised the issue in the context of the direct appeal of his capital case. He had been taking psychotropic medications before and during the proceedings. Cortes received a behavioral clinical examination which resulted in a finding that he was not suffering from a psychiatric disorder, was not receiving medications and understood the nature of the proceedings against him such that he should be able to cooperate with counsel. *Cortes*, 181 Ill. 2d at 271. A fitness hearing was conducted after the trial, but during the pendency of an unrelated pending murder case. *Cortes*, 181 Ill. 2d at 271-72. Defense counsel argued that the delay in providing the hearing made the hearing inappropriate and untimely, such that he believed he was entitled to a new trial. The trial court disagreed, finding that the defendant was fit for trial with or without medication. In reviewing the case, the Illinois Supreme Court found that "under section 104—21(a), a defendant was entitled to a fitness hearing because he was prescribed Sinequan, a psychotropic drug, during the course of the criminal proceedings against him." *Cortes*, 181 Ill. 2d at 275. Acknowledging that Cortes got his hearing, albeit after the trial had concluded, the supreme court applied *Burgess* to support the decision of the trial court. The supreme court reasoned

that "fitness at the time of trial could be fairly and accurately determined after the fact because, as in *Burgess*, the evidence showed that the medication ingested by the defendant did not have any effect on his fitness." *Cortes*, 181 Ill. 2d at 276, citing *Burgess*, 176 Ill. 2d at 303-04; *Neal*, 179 Ill. 2d at 554.

The Illinois Supreme Court next addressed the issue in *People v. Kinkead*, 182 Ill. 2d 316 (1998) (*Kinkead II*), the appeal following the remand hearing ordered by the supreme court in *Kinkead I*. Defendant Kinkead ultimately received a new trial because, after discussing all of the then-available case law in the area, the Illinois Supreme Court concluded that much of the evidence in that case supported the defendant's claim that he was affected by his psychotropic medication. This conclusion was reached under the guidance of the court's reasoning in *Burgess*, with its case-specific approach to determining whether a given defendant was fit to stand trial.

Finally, we come to *Mitchell*, 189 Ill. 2d 312, a significant case that expressly overruled *Nitz*, 173 Ill. 2d 151. *Mitchell* stands for the proposition that "[d]ue process does not require that everyone taking 'psychotropic or other medication' under medical direction should be granted a fitness hearing. Section 104—21(a)'s provision is merely a statutory right granted by the legislature—a right that the legislature has now taken away." *Mitchell*, 189 Ill. 2d at 329, quoting 725 ILCS 5/104—21(a) (West 1998). Statutes do not confer constitutional rights, and the allegation of a deprivation of a statutory right is not a proper claim under the Act. *Mitchell*, 189 Ill. 2d at 329, citing *People v. Orndoff*, 39 Ill. 2d 96, 99 (1968). If the rights conferred in section 104—21(a) were constitutional and not legislative, the legislature could not have eliminated it by merely amending the statute. *Mitchell*, 189 Ill. 2d at 330.

"The Illinois statutory scheme for determining fitness comports with due process with or without section 104—21(a) fitness hearings. *Nitz*'s conclusion that a defendant may raise in a post-conviction petition a denial of a section 104—21(a) fitness hearing as a denial of due process was erroneous, and we hereby overrule *Nitz*." *Mitchell*, 189 Ill. 2d at 329. "[The Illinois Supreme Court's] prior determination that the legislature equated the ingestion of psychotropic medication with a *bona fide* doubt of defendant's fitness was simply erroneous." *Mitchell*, 189 Ill. 2d at 330.

"[Section 104—21(a)] merely provides that a defendant taking psychotropic or other medication under medical direction is entitled to a fitness hearing. The word ' "entitled" ' means ' "to give a right or legal title to" ' (*Brandon*, 162 Ill. 2d at 461, quoting Black's Law Dictionary 532 (6th ed. 1990)), or '[t]o qualify for; to furnish with

proper grounds for seeking or claiming' (Black's Law Dictionary 532 (6th ed. 1990)). See also *People v. Tilson*, 108 Ill. App. 3d 973, 977 (1982) ('the word "entitled" signifies the granting of a right or privilege to be exercised at the option of parties for whose benefit it is used; it is directly opposed to the idea of imposing an obligation or limitation'). Section 104—21(a) does not, as does section 104—11, require the trial judge to make a further inquiry when certain facts are brought to his attention. Rather, it gives the defendant the 'proper grounds for seeking or claiming' a fitness hearing. As Justice Miller has stated, 'While section 104—21(a) declares that a defendant receiving psychotropic drugs is entitled to a fitness hearing, the statute does not establish a defendant's incompetency, say that a hearing must be held if the defendant refuses one, or excuse counsel's failure to request a hearing in a timely manner.' *Gevas*, 166 Ill. 2d at 473 (Miller, J., dissenting, joined by Bilandic, C.J., and Heiple, J.); see also *People v. Kinkead*, 168 Ill. 2d 394, 419 (1995) (Miller, J., dissenting, joined by Bilandic, C.J., and Heiple, J.) ('[t]o say that a defendant is "entitled" to a fitness hearing is much different from saying that a hearing is absolutely required in all circumstances, no matter how tardy the defendant's request might be'). We erred in *Gevas* when we stated, and in *Brandon* when it implied, that the legislature equated the administering of psychotropic medication to a defendant with a *bona fide* doubt as to his fitness to stand trial, and we no longer adhere to that conclusion." *Mitchell*, 189 Ill. 2d at 331.

■ *Mitchell* is the current state of the law in this area. We are bound by its mandates until the Illinois Supreme Court decides to change the law. It is not significant, for purposes of this inquiry, that the legislature changed the law. That legislative change speaks to the future and those defendants whose convictions and sentences happened after the effective date of the change. As the number of remaining defendants similarly situated with Stokes dwindles to its eventual end, we now follow the directions of the supreme court to recognize that, while the ingestion of psychotropic medication is an important signal that a defendant *may* not be competent to stand trial, the mere ingestion is not automatically equated with a *bona fide* doubt as to fitness to stand trial.

Stokes argues that *Mitchell* should not be applied to the case before us because a challenge to the constitutionality of a criminal statute may be raised at any time. *People v. Wright*, 194 Ill. 2d 1, 23 (2000); *People v. Wagener*, 196 Ill. 2d 269 (2001). While we accept this as an axiom, it is ultimately unavailing in the case before us. As we have seen, the issue raised in this matter is statutory and not constitutional. It has been raised many times and consistently reiterated that the

statute in question has survived constitutional scrutiny. Since this is not really a challenge to the constitutionality of section 104—21(a), both *Wright* and *Wagener* really do not apply.

## CONCLUSION

In light of the foregoing, the decision of the trial court is affirmed.

Affirmed.

GREIMAN and QUINN, JJ., concur.